**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Philip Arnold Rock, | Case No. 25-cv-3493 (MJD/EMB) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Amanda Margaret Hawkins, | |
| Defendant. | |

Plaintiff Philip Rock, proceeding pro se, filed a complaint (Dkt. No. 1) asserting a substantive due process claim under 42 U.S.C. § 1983.  Defendant Amanda Hawkins moved to dismiss the complaint.  (Dkt. No. 6.)  Mr. Rock filed a response (Dkt. No. 17), and Ms. Hawkins filed a reply (Dkt. No. 22).  The parties also filed supplemental briefing, as ordered by the Court.  (Dkt. Nos. 25, 27.)  District Judge Michael J. Davis referred the motion to me for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  (*See* Dkt. No. 16.)  For the following reasons, I recommend the motion be GRANTED, and this action be DISMISSED.

## I.    <u>Background</u>

This case involves a child-custody dispute between Mr. Rock and Ms. Hawkins, who coparent their minor child, JRH.  The parties' lengthy custody

dispute has been proceeding in the Hennepin County District Court since December 2010.[1]  (*See* Dkt. No. 11-2 at 52.)

In February 2023, the Hennepin County court entered an agreement that (1) acknowledged that Mr. Rock and Ms. Hawkins shared joint legal and physical custody of JRH, and (2) set forth "a parenting-time schedule, including alternating months and specified holidays."  (Compl. (Dkt. No. 1) ¶ 6).

According to the parenting-time agreement, JRH was scheduled to be in Mr. Rock's care "for the months of March and May, 2025," as well as July 15 through August 31, 2025.  (Compl. ¶ 7.)  Nevertheless, Ms. Hawkins "refused to comply with the Agreement and withheld JRH from [Mr. Rock] on multiple occasions."  (*Id.* ¶ 8.)  This deprivation began "on or about March 8," and included "the entire months of March [and] May," as well as the period from July 15 through August 31, 2025.  (*Id.*)

Mr. Rock attempted to regain physical custody of JRH on several occasions.  First, on July 15, Mr. Rock went to the Carver County Sheriff's Office with "court papers" that showed he was scheduled to take physical custody of JRH at 11:00am that day.  (Compl. ¶ 10.)  After that visit, a

---

[1] All references to the "Hennepin County action" or "state-court action" pertain to this ongoing family law proceeding.  Because that action has been placed under seal, my review of those proceedings is limited to the filings submitted by the parties.  (*See* Dkt. No. 11-1 at 2.)

deputy "went to [Ms. Hawkins]'s home and confirmed that nobody came to the door," even though Mr. Rock alleges the court-ordered custody exchange was to take place there. (*Id.*) After Mr. Rock requested a welfare check, Deputy Lonnie Marcyes spoke to Ms. Hawkins, who falsely told the deputy "it was not [Mr. Rock]'s parenting time or 'time for visitation.'" (*Id.*) Relying on that representation, Deputy Marcyes "logged an entry that . . . it was not [Mr. Rock]'s time for visitation." (*Id.* ¶ 11.) The sheriff's office "declined to facilitate the court-ordered exchange" and "closed the incident as a 'civil matter.'" (*Id.*)

About two weeks later, on July 28, Mr. Rock tried to pick JRH up from Ms. Hawkins's home. (Compl. ¶ 12.) When he found the house empty, Mr. Rock again contacted the sheriff's office and requested another welfare check, as well as assistance with the custody exchange. (*Id.*) The sheriff's office called Ms. Hawkins twice and requested she call them back. (*Id.*) About 25 minutes later, Ms. Hawkins returned those calls, told the sheriff's office she and JRH were on vacation, and falsely advised that "there was a new order put in place around May that said [JRH] d[id] not have to go with [Mr. Rock] pending a custody evaluation." (*Id.* ¶ 13 (first alteration in original).) Although Ms. Hawkins had asked the Hennepin County court for "temporary exclusive parenting time," the court had reserved that request "pending completion of the parties' Parenting Time Evaluation." (*Id.*)

3

About a week and a half after that, on the evening of August 6, Mr. Rock encountered JRH at a McDonald's restaurant. (Compl. ¶ 14.) JRH— who later reported the incident to the South Lake Minnetonka Police Department—told officers that "his father, who does not have parenting rights, cornered him and tried to force him into a car." (*Id.*) Mr. Rock told responding officer Jake Nelson that JRH had refused to talk to him, threatened to call police, and left the restaurant on his bike. (*Id.*)

After the incident, another officer, Officer Buchanan, met with JRH, Ms. Hawkins, and JRH's stepfather. (Compl. ¶ 17.) JRH told Officer Buchanan that Mr. Rock had "grabbed his arm and the back of his E bike" in an attempt to stop him from leaving the McDonald's. (*Id.*) At this time, Officer Buchanan "believed there was no custody agreement." (*Id.*) JRH told Officer Buchanan that the family was "waiting on a parent evaluator to determine visitation hours and child custody." (*Id.* ¶ 19.) When Officer Buchanan asked Ms. Hawkins about the custody situation, she claimed that she and her husband were "currently in the process of getting full custody but as it stands they [had] joint custody." (*Id.*) At the time she made this representation, however, Ms. Hawkins had "not made a request for full custody," and the state court had reserved ruling on her request for "temporary exclusive parenting time." (*Id.* ¶ 20.)

4

Officer Buchanan later reviewed surveillance footage of the incident at McDonald's. The footage showed Mr. Rock "holding onto [JRH's] E-Bike and one of his arms," but did not show Mr. Rock trying to force his son into a vehicle. (Compl. ¶ 22 (alteration in original).) According to the incident report, officers told the involved parties that no crime had occurred and advised JRH "that his father still has custodial rights." (*Id.* ¶ 23.)

In the Hennepin County action, Mr. Rock filed a motion seeking "compensatory parenting time for any parenting time missed from March 9th to the date of [JRH's] return to [Mr. Rock's] care". (*See* Dkt. No. 11-6 ¶ 2.)

Mr. Rock then filed this action, naming Ms. Hawkins as the only defendant. The complaint includes a single claim for deprivation of substantive due process under 42 U.S.C. § 1983. (Compl. ¶¶ 29–32.) Mr. Rock claims Ms. Hawkins deprived him of a fundamental liberty interest by interfering with his right to parent. (*See id.*) He alleges that he "has lost more than 75 overnights." (*Id.* ¶ 28.) As a result, Mr. Rock seeks declaratory and injunctive relief, compensatory parenting time, and compensatory and punitive damages. (*Id.* at 13–14.)

Ms. Hawkins moved to dismiss, arguing (1) the Court lacks jurisdiction over the dispute under the domestic-relations exception; (2) the Court should abstain from reaching the merits in light of *Younger v. Harris*, 401 U.S. 37 (1971); and (3) the complaint fails to state a claim because it doesn't properly

allege state action or the deprivation of a constitutional right. Because she is correct on all three points, I recommend the Court dismiss this action.

## II. Domestic-Relations Exception

Ms. Hawkins first moves for dismissal under Rule 12(b)(1), arguing this Court lacks jurisdiction over the dispute under the domestic-relations exception. I disagree that the domestic-relations exception should be extended to bar Mr. Rock's claim.

### a. Legal Standard

A complaint must be dismissed if the federal court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion can raise either a facial or a factual attack. A facial attack requires the Court to accept the factual allegations in the pleadings as true, while a factual attack allows the Court to consider materials outside the pleadings. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). Ms. Hawkins raises a factual attack, relying on filings made in the state court. (*See* Dkt. No. 7 at 10–11); *cf. Todd v. Am. Fed'n of State, Cnty., & Mun. Employees,* 571 F. Supp. 3d 1019, 1024 (D. Minn. 2021) (treating Rule 12(b)(1) argument as a factual attack where moving party's argument relied on matters outside of pleadings), *aff'd*, 125 F.4th 1214 (8th Cir. 2025).

### b. Analysis

The domestic-relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees" under certain circumstances. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The doctrine has its roots in the diversity-jurisdiction statute. In recognizing the existence of the exception, the *Ankenbrandt* court therefore looked to the text of 28 U.S.C. § 1332 and the history surrounding it. *Id.* at 692–701.

Although the Constitution broadly confers federal courts with authority to hear certain cases "in Law and Equity," Congress may "withhold[] jurisdiction from [the federal courts] in the exact degrees and character which to Congress may seem proper for the public good." *Ankenbrandt*, 504 U.S. at 698 (quoting *Cary v. Curtis*, 44 U.S. 236, 245 (1845)). Congress intended to do just that when it passed the Judiciary Act of 1789, which was a precursor to the diversity-jurisdiction statute. That act provided federal courts with concurrent jurisdiction over "all suits of a civil nature *at common law or in equity*," as long as the amount in controversy exceeded $500 and the parties were diverse. *Id.* at 689 (quoting Act of Sept. 24, 1789, § 11, 1 Stat. 73, 78). When Congress later enacted the diversity statute, it kept the "at common law or in equity" language, which the Supreme Court had already interpreted as a "jurisdictional limitation over the issuance of divorce and alimony decrees." *Id.* at 699. Accordingly, *Ankenbrandt* reasoned, Congress

"apparent[ly] accept[ed] [] this construction of the diversity jurisdiction provision[]," including the jurisdictional limitation on domestic relations. *Id.* at 700–01.

*Ankenbrandt's* holding was limited to diversity cases, but some courts have extended the Supreme Court's analysis to conclude that the exception applies to federal-question cases too. In enacting the precursor to the federal-question statute, Congress used the same key language—"all suits of a civil nature at common law or in equity,"—to "confer[] a general federal-question jurisdiction on the federal courts." *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (Posner, J.) (citing Judiciary Act of March 3, 1875, § 1, 18 Stat. 470). When Congress passed this act in 1875, the domestic-relations exception—which sprung from that same key language—had already "become established in the case law." *Id.* Considering the rationale set forth in *Ankenbrandt*, it would follow that Congress intended to adopt the jurisdictional limitation on domestic relations by using the same language in the federal question statute.

Circuit courts are split on whether the exception applies to federal-question cases. Because the statutory text underpinning the domestic-relations statute is found in the precursors to both § 1331 and § 1332(a), the Seventh Circuit concluded "[t]here is no good reason to strain to give a different meaning to the identical language in the diversity and federal-

8

question statutes."[2]  *Jones*, 465 F.3d at 307; *see also Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (applying domestic-relations exception "to both federal-question and diversity suits").  Five other circuit courts have squarely addressed this issue.  All five declined to extend the domestic-relations exception to federal-question cases—although they did so without fulsome analysis of the text upon which the exception is based.  *See Deem v. DiMella-Deem*, 941 F.3d 618, 621–23 (2d Cir. 2019); *Flood v. Braaten*, 727 F.2d 303, 307–08 (3d Cir. 1984); *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997); *Atwood v. Fort Peck Tribal Ct. Assiniboine*, 513 F.3d 943, 946–47 (9th Cir. 2008).

The Eighth Circuit hasn't provided definitive guidance, although it has acknowledged the uncertainty of the doctrine's reach.  *See Ruffalo by Ruffalo v. Civiletti*, 702 F.2d 710, 717–18 (8th Cir. 1983) ("It is unclear whether the domestic-relations exception applies to cases brought under the federal-question statute.")  Despite that uncertainty, the Eighth Circuit has

---

[2] The 1948 amendments to both § 1331 and § 1332 changed the statutory language from "all suits of a civil nature at common law or in equity" to "all civil actions."  *See Jones*, 465 F.3d at 307.  The *Ankenbrandt* Court concluded that "absent any indication that Congress intended to alter this exception," Congress adopted the interpretation that included the domestic-relations exception "when it reenacted the diversity statute" in 1948.  504 U.S. at 700. This logic applies with equal force to the § 1331 amendments.  *See Jones*, 465 F.3d at 307.

frequently—although not universally—affirmed lower-court decisions applying the domestic-relations exception to federal-question cases.  *See, e.g.*, *Moore v. Knodell*, 23-3544, 2024 WL 2861744, at \*1 (8th Cir. June 6, 2024) ("It is clear from the record that the domestic relations exception to federal jurisdiction divested the district court of subject-matter jurisdiction to adjudicate Moore's claims."); *Sturgeon v. Benton*, 242 F.3d 376 (8th Cir. 2000) (unpublished) (citing  *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994)); *Johnson v. St. Louis Cnty. Pub. Health & Hum. Servs.*, 817 F. App'x 294, 295 (8th Cir. 2020) (unpublished); *Smith v. Huckabee*, 154 F. App'x 552, 555 (8th Cir. 2005) (citing *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 124 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).  *But see Garland v. Schroeder*, 24-1698, 2024 WL 5074879, at \*1 (8th Cir. Dec. 11, 2024) (affirming in all other respects but concluding, without further explanation, that "the district court had jurisdiction to review this matter"); *Grazzini–Rucki v. Knutson*, No. 13–CV–2477 (SRN/JSM), 2014 WL 2462855, at \*12 (D. Minn. May 29, 2014), *aff'd* (8th Cir. Mar. 31, 2015).  Nevertheless, the Eighth Circuit has counseled that it "generally . . . appl[ies] [the domestic-relations exception] only in narrow circumstances."  *Crain v. Crain*, 72 F.4th 269, 277 (8th Cir. 2023) (citing *Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992)).

10

Absent definitive guidance, several judges in this district have declined to apply the domestic-relations exception to federal-question cases. *See, e.g.,* *Schwartz v. Bogen*, CV 17-3329 (MJD/TNL), 2017 WL 5891735, at *4 (D. Minn. Nov. 28, 2017) ("This is not a diversity case; therefore, the domestic relations exception does not apply."), *aff'd,* 913 F.3d 777 (8th Cir. 2019); *Grazzini-Rucki*, 2014 WL 2462855, at *12 ("[T]he domestic relations exception does not apply because it is a limitation on diversity jurisdiction, and there is no diversity here.")

Finally, other circuit courts have recognized a domestic-relations *abstention* doctrine, particularly in the context of § 1983 cases. *See Schrock v. Lyons*, 25-CV-109-CJW-MAR, 2025 WL 3782661, at *3 n.5 (N.D. Iowa Nov. 17, 2025) (citing cases), *aff'd,* 2026 WL 1746255 (8th Cir. Feb. 25, 2026); *see also Kahn*, 21 F.3d at 860 n.1. Although the Eighth Circuit has acknowledged that federal courts generally abstain from exercising jurisdiction "when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody," there is no indication that it would endorse that type of abstention in federal-question cases. *Kahn*, 21 F.3d at 861. Considering the trend in the other circuit courts of appeal, the uncertainty around the domestic relations exception in

11

the Eighth Circuit, and opinions issued by judges in this district, I

recommend the Court decline to apply the domestic-relations exception here.[3]

### III.   *Younger* Abstention

Ms. Hawkins next argues that this action is subject to dismissal under

principles of *Younger* abstention.  *See Younger*, 401 U.S. at 37.  I agree and

recommend the Court dismiss the complaint pursuant to *Younger*.

#### a. Legal Standard

*Younger* requires federal courts to "abstain from exercising their

jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates

important state interests, and (3) that provides an adequate opportunity to

raise any relevant federal questions."  *Arseneau v. Pudlowski*, 110 F.4th

1114, 1117 (8th Cir. 2024) (quoting *Tony Alamo Christian Ministries v. Selig*,

664 F.3d 1245, 1249 (8th Cir. 2012)).  *Younger* "reflects a strong policy

---

[3] If the domestic-relations exception applied to federal-question cases, it would clearly deprive the Court of jurisdiction over this action.  Mr. Rock seeks relief under § 1983 for "the same conduct involved in a state domestic proceeding."  *Wallace v. Wallace*, 736 F.3d 764, 767 (8th Cir. 2013).  Both cases stem from Ms. Hawkins's failure to return JRH to Mr. Rock beginning around March 8. (*Compare* Dkt. No. 11-7 ¶¶ 5, 33, *with* Compl. ¶ 8.)   And Mr. Rock asks this Court to award compensatory parenting time—relief he has already sought in state court.  (*Compare* Dkt. No. 11-6 ¶ 2, *with* Compl. at 13.)  The domestic-relations exception would bar him from seeking an identical domestic remedy in this federal forum.  *See Wallace*, 736 F.3d at 767 (concluding federal courts lack jurisdiction "where the requested federal remedy overlaps the remedy at issue in the state proceeding").

12

against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).  Although federal courts decline to exercise jurisdiction under *Younger*, the doctrine doesn't deprive courts of jurisdiction.  *See Wassef v. Tibben*, 68 F.4th 1083, 1086 n.3 (8th Cir. 2023).

### b. Analysis

Here, all three *Younger* requirements are satisfied.  First, there is an ongoing family law proceeding in the Hennepin County court, as demonstrated by Mr. Rock's state-court motion.  *See Tony Alamo Christian Ministries*, 664 F.3d at 1250 ("For purposes of applying *Younger* abstention, the relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed.").  Nevertheless, Mr. Rock argues that *Younger* doesn't fit here because this dispute isn't one of the three types of parallel proceedings enumerated by *Sprint Commc'ns* v. *Jacobs,* 571 U.S. 69, 78–81 (2013).  (*See* Resp. at 6.)  Although *Sprint* recognized that "[c]ircumstances fitting within the *Younger* doctrine . . .  are 'exceptional,'" they include "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).  Contrary to Mr. Rock's argument, "[n]umerous federal courts (including courts in this District) have specifically

13

determined that state family-court proceedings present the sort of 'exceptional circumstances' that give rise to *Younger* abstention." *Rubbelke v. Zarembinski*, No. 23-CV-0707 (PJS/ECW), 2023 WL 3094371, at *2 (D. Minn. Apr. 26, 2023) (citing cases); *see also Lewis v. Seventh Circuit Court - S. Dakota Unified Judicial Sys.*, 793 F. App'x. 464, 465 (8th Cir. 2020) (affirming dismissal under *Younger* where mother brought § 1983 claim "alleging violations of her constitutional rights in a pending state court custody action").

As to the second *Younger* factor, there's no doubt that "[i]ssues of . . . child custody implicate important state interests, particularly Minnesota's interest in domestic relations." *Ybarra v. Legal Assistance of Dakota Cnty.*, 25-CV-1948 (KMM/DTS), 2025 WL 3215659, at *3 (D. Minn. Nov. 18, 2025) (citing *Carlson v. Cnty. of Ramsey*, No. 16-cv-765 (SRN/BRT), 2016 WL 3352196, at *6 (D. Minn. June 15, 2016)).  Mr. Rock does not argue otherwise.

And as to the third *Younger* factor, the Hennepin County court provides Mr. Rock with a venue to raise his concerns about Ms. Hawkins's alleged noncompliance with the parenting time agreement, as well as the issue of compensatory parenting time.  *See Ybarra*, 2025 WL 3215659, at *3

14

(concluding state proceedings provided "an adequate venue to address the concerns" raised in the federal lawsuit).

Finally, Mr. Rock argues that even if *Younger* applies, this action should be stayed rather than dismissed.  (Resp. at 8.)  "Ordinarily, *Younger* requires *dismissing* claims for declaratory and injunctive relief and *staying* damages claims until the relevant state case ends."  *Tietz v. Hennepin Cnty. Human Services*, 26-CV-53 (ECT/DTS), 2026 WL 353111, at *4 (D. Minn. Feb. 9, 2026) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)).  That's not the case if the damages claim is "so bound up with the state proceeding that awarding damages would effectively declare the state process or result unconstitutional."  *Id.* (citing *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 115–16 (1981)).  Courts in this district "have dismissed damages claims in § 1983 suits challenging ongoing state-court proceedings when those claims depend on undermining state-court rulings."  *Id.* (citing cases).

However, "[a] stay is preferred to dismissal in cases where there is a possibility that the parties will return to federal court."  *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002).  In order to determine whether Mr. Rock could return to federal court, I assess the merits of his claims below and conclude that they are subject to dismissal. Thus, there is no possibility that he will return to the federal venue.  Under the

circumstances presented here, I recommend the complaint be dismissed with prejudice. *See Ybarra*, 2025 WL 3215659, at *3 (recognizing that dismissals under *Younger* are ordinarily without prejudice but dismissing with prejudice "because each of Mr. Ybarra's claims also fail under a Rule 12(b)(6) analysis or are plainly frivolous").

## IV.   Failure to State a Claim

Ms. Hawkins argues Mr. Rock has failed to state a § 1983 claim under Rule 12(b)(6) because he has not adequately pled (1) the existence of state action or (2) the deprivation of a constitutional right. (*See* Dkt. No. 7 at 19–22; Dkt. No. 25 at 1–3.) Again, I agree on both counts.

### a. Legal Standard

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While the complaint need not contain "detailed factual allegations," it must include "more than labels and conclusions" or a "formulaic recitation of

16

the elements of a cause of action" to avoid dismissal. *Twombly*, 550 U.S. at 555.  In conducting this analysis, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party.  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

Where, as here, the plaintiff is proceeding without counsel, the Court will liberally construe the complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Even so, a pro se complaint must still "allege sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### b. Analysis

To state a claim under 42 U.S.C. § 1983, Mr. Rock "must allege that an official acting under the color of state law violated rights guaranteed either by the Constitution or by federal statute."  *Kelly v. City of Omaha*, 14-cv-3446, 2016 WL 660117 (8th Cir. Feb. 18, 2016).  Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985) (plurality).

i.  Ms. Hawkins is not acting under color of state law.

"A private party may be held liable on a § 1983 claim if '[s]he is a willful participant in joint action with the State or its agents.'"  *Mershon v.*

17

*Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) (quoting *Dennis v. Sparks,* 449 U.S. 24, 27 (1980)).  At the motion-to-dismiss stage, Mr. Rock "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between [Ms. Hawkins] and the [deputies]." *Id.*; *see also Youngblood v. Hy-Vee Food Stores, Inc.,* 266 F.3d 851, 855 (8th Cir. 2001) ("A private party who willfully participates in joint activity with the State or its agents is considered a state actor.").  "The facts alleged with respect to a conspiracy must be specific and may not be merely conclusory." *Tracy v. SSM Cardinal Glennon Children's Hosp.*, 4:15-CV-1513 CAS, 2016 WL 3683000, at *7 (E.D. Mo. July 12, 2016) (citing *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981)).

Here, the complaint includes three separate interactions between Ms. Hawkins and the deputies.  First, Mr. Rock alleges that after Ms. Hawkins falsely told Deputy Marcyes that it wasn't Mr. Rock's "time for visitation" on July 9.  (Compl. ¶¶ 10–11.)  Second, Mr. Rock alleges that on July 28, Ms. Hawkins falsely told another deputy that a "new order" had been put in place, and her son did "not have to go with [Mr. Rock] pending a custody evaluation." (*Id.* ¶¶ 12–13.)  Third, he alleges Ms. Hawkins falsely told officers on August 6 that she was "in the process of getting full custody." (*Id.* ¶¶ 14, 19–20.)  In all three instances, officers declined to facilitate a custody exchange.  Mr. Rock therefore claims Ms. Hawkins "enlist[ed] deputies to withhold" their son "during [Mr. Rock]'s court-ordered time."  (*Id.* ¶ 25.)

18

These statements do not plausibly allege a meeting of the minds between Ms. Hawkins and the deputies.  Mr. Rock claims deputies chose not to intervene because Ms. Hawkins lied to them about the terms of the parenting-time agreement and the nature of the custody dispute more broadly.  But these facts, accepted as true, demonstrate Ms. Hawkins and the deputies had no mutual understanding.  According to Mr. Rock, the deputies believed JRH was supposed to be in his mother's custody, while Ms. Hawkins knew that wasn't the case.  Because "the mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials," Mr. Rock has failed to plausibly allege state action.  *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009); *see also Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (finding no meeting of the minds where private attorney "did no more than provide information to a government agency").

Nevertheless, Mr. Rock argues Ms. Hawkins did more than furnish information because deputies *relied* on her representations in failing to enforce the parenting-time order.  This framing erroneously focuses on the outcome, rather than the parties' understanding.  Mr. Rock claims Ms. Hawkins ultimately achieved her goal (i.e., maintaining custody of JRH during Mr. Rock's parenting time) by manipulating officers, but those allegations don't bear on whether the officers intended to violate Mr. Rock's

19

rights. *Cf. Magee v. Trustees of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1058 (D. Minn. 2013) ("Although these allegations, accepted as true, may show that Titus attempted to conspire with the St. Paul Police Department, they do not plausibly indicate that the St. Paul Police Department and Titus had a meeting of the minds where both the Department and Titus jointly agreed to violate Magee's constitutional rights."), *aff'd*, 747 F.3d 532 (8th Cir. 2014); *Mosley v. Reeves*, 99 F. Supp. 2d 1048, 1055 (E.D. Mo. 2000) (finding complaint lacked allegations that ex-wife "acted in concert with any state actor in allegedly filing a false police report" amid divorce proceedings, despite the fact that police relied on her report to arrest ex-husband).

Accordingly, Mr. Rock has not plausibly alleged that Ms. Hawkins acted under color of state law. His complaint is subject to dismissal on that ground.

ii. <u>Mr. Rock mischaracterizes the right at play.</u>

Even if Mr. Rock had adequately alleged state action, he does not plausibly allege a deprivation of a constitutional right. He couches his claim in the deprivation of his fundamental right to parent, as guaranteed by the Fourteenth Amendment. (Resp. at 12–13.)

To be sure, "[i]t is beyond question that [p]arents have a fundamental liberty interest in the care, custody, and management of their children." *Zakrzewski v. Fox*, 87 F.3d 1011, 1013 (8th Cir. 1996) (quotations omitted)

20

(second alteration in original)). But the factual allegations here, accepted as true, don't plausibly allege the deprivation of that right. Mr. Rock claims the complaint "states a concrete deprivation of parenting time" because it "alleg[es] that deputies—relying on Defendant's misrepresentations and assertions—declined to effectuate a court-ordered exchange contrary to a valid order on two specific dates." (Resp. at 13.)  He continues: "Deputies relied on Defendant's word to stand down against a valid order."  (*Id.*)

The gravamen of Mr. Rock's claim is that deputies violated his federal rights by failing to independently corroborate and enforce the terms of the parenting-time agreement.  But "a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim." *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) (quoting *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995)).  In *Ebmeier*, a father argued that a social worker violated his constitutional right to parent "by deviating from the court-approved case plan and by disregarding [state social services] policies." *Id.*  The father's parental rights were ultimately terminated as a result.  Although the Eighth Circuit recognized that the father "surely" had "a constitutionally protected liberty interest in the care and custody of his children," the focus of his claim was on a state actor's failure to enforce a state-court order.  *Id.*  The court "emphasize[d] that violations of state laws, state-agency regulations, and,

21

*more particularly, state-court orders*, do not by themselves state a claim under 42 U.S.C. § 1983." *Id.* (emphasis added).

*Ebmeier* controls the outcome here.  Mr. Rock's alleged constitutional deprivation flows solely from the deputies' failure (in reliance on Ms. Hawkins's statements) to enforce the parenting-time agreement issued by the state court.  A state actor's failure to enforce a state-court order simply does not give rise to a federal claim.  *Cf. Bowes-Northern v. Miller*, No. 21-3319, 2022 WL 16849058, at *1 (7th Cir. Nov. 10, 2022) (denying father's § 1983 claim, premised on mother's failure to comply with parenting order, because "[e]nforcement [of that order] is a matter for the state to work out for itself") (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005))).

This complaint, which only alleges *inaction* by deputies, is unlike *Zakrzewski*, 87 F.3d 1011.  There, the father was in physical custody of his minor child when the boy's mother accused him of failing to return the child in violation of the parties' divorce decree.  *Id.* at 1013.  The mother contacted the sheriff's department to effectuate the child's return.  After conducting a traffic stop, deputies told the father "they had orders to take the child" and "threatened to arrest [the father] if he refused to comply."  *Id.*  The father relinquished physical custody of his son based on deputies' representations.  The court ultimately concluded the facts of that case were "insufficient to indicate that the defendants intentionally infringed upon [the father's] liberty

22

interest in a manner that shocks the conscience." *Id.* Nevertheless, the court acknowledged "the possibility that visitation and placement decisions may be subject to due process scrutiny, as such decisions may infringe upon a parent's interest in the care, custody, and management of their child." *Id.* at 1014 (quotation omitted). In contrast, nothing in Mr. Rock's complaint alleges the type of affirmative conduct present in *Zakrzewski* that compelled an inquiry into the limitations on the constitutional right to parent.

Because Mr. Rock has failed to allege the deprivation of a constitutional right, I recommend this Court dismiss this case with prejudice.

## V.      Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT this action be DISMISSED with prejudice.

Dated: July 14, 2026              *s/Elsa M. Bullard*
                                  Elsa M. Bullard
                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).